## Richmond.

HENLEY v. COTTRELL REAL ESTATE, INS. & LOAN CO. AND OTHERS.

January 15, 1903.

1. SPECIFIC PERFORMANCE—*Parol Contract—Part Performance.*—A verbal contract for the sale or lease of land, if partly performed by the party seeking relief, may be specifically enforced by a court of equity, notwithstanding the statute of frauds. But the contract must be clear, definite, and unequivocal in all its terms, and established by clear and satisfactory proof; and the acts of part performance must refer to, result from or be made in pursuance of the agreement proved. Furthermore the agreement must have been so far executed that a refusal of full execution would operate as a fraud on the other party and place him in a situation which does not lie in compensation.

2. SPECIFIC PERFORMANCE—*Lease of Room—Improvements—Damages at Law.*—A court of equity will not decree the specific performance of a contract for the lease of a single room in a building, although the lessee has made valuable improvements under his contract, as the lessee can be adequately compensated in damages for the breach of the contract.

3. INJUNCTION TO PROCEEDING AT LAW—*Confession of Judgment.*—Upon application for an injunction to an action at law, the complainant in the bill should be required to confess judgment at law before the injunction is granted, but the judgment should be held under the control of the chancellor until the injunction suit is decided, so that if the injunction is dissolved because the complainant's remedy is at law and not in equity, the judgment may be set aside and the case at law reinstated.

4. INJUNCTION TO PROCEEDING AT LAW—*Dismissal of Action.*—A court of equity has no power, as such, to dismiss an action at law. When an injunction to a proceeding at law is dissolved and the bill dismissed the parties to the action may prosecute and defend at will.

Appeal from a decree of the Corporation Court of the city of Newport News, pronounced May 31, 1901, in a suit in chancery, wherein the appellant was the complainant, and the appellees were the defendants.

*Amended and Affirmed.*

The opinion states the case.

*H. R. & J. G. Pollard* and *Jones, Woodward & Phillips,* for the appellant.

*O. D. Batchelor* and *R. M. Lett,* for the appellees.

KEITH, P., delivered the opinion of the court.

Appellant, Thomas B. Henley, filed his bill in the Corporation Court of the city of Newport News, in which he alleges that he and one J. E. Warren were, prior to the 31st of January, 1901, partners in the real estate business under the firm name of Henley & Warren, and upon that day the firm was dissolved, and the business continued by Henley in the same office, which is in a room immediately above the basement of a building then owned by one H. W. Silsby; that Silsby was a resident of the city of New York, and the firm of Henley & Warren were his agents in the city of Newport News for the collection of rents; that on the completion of the building referred to, in March, 1900, Silsby entered into a verbal agreement with the firm of Henley & Warren that they should occupy this room for five years next ensuing; that in pursuance of said agreement they were at once put in possession, and had made valuable improvements involving the expenditure of large sums of money, which will be wholly lost if he should now be deprived of the possession of the office; that, upon the dissolution of the firm of Henley & Warren, Warren had sold to the plaintiff his interest in the leased office for $150, and about $200 for his interest in the improvements; that, by virtue of

the agreement referred to, Warren's entire interest in the lease for five years, and in the improvements, became the property of complainant; that he has .ever since paid the rent regularly to Silsby; that complainant is informed that Silsby has sold the building to the Cottrell Real Estate, Insurance & Loan Company, which well knew at the time of the alleged purchase that complainant was in the possession and occupancy of the office; that, as soon as he heard of the negotiation for the sale by Silsby of the building, he delivered a written notice to the real estate company informing it of his lease. The bill further shows that the real estate company has instituted an action of unlawful detainer for the possession of this office; and the prayer of the bill is that the contract of lease may be specifically executed, that the real estate company may be perpetually enjoined from prosecuting its action of unlawful detainer, and for general relief.

Silsby denies that he ever executed a lease to Henley & Warren, or promised to give or execute a lease of said office to the firm of Henley & Warren, for a term of five years, or for any other fixed term. He avers "that he in express terms specifically refused to give or execute a lease, and likewise refused in definite terms to give to them the use of this office for any fixed time whatsoever, and says that the only agreement between them in reference to the time of occupancy of said office was that they might possess and occupy the same during the continuation of his ownership of the building; that thereupon it was suggested by J. E. Warren that the defendant should execute a lease to Henley & Warren, which lease might contain a clause making provision for the delivery up and surrender to the defendant of the office and the lease thereof, if necessary, when a sale might be had for the property; that the defendant thereto replied that such lease would be in no wise more binding than the holding of the office, under the parol agreement, during his ownership thereof."

The bill does not state the rent to be paid for the office, and there is much controversy as to its amount. It is conceded that Henley & Warren went into possession of the office, that they were Silsby's agents for the collection of rents, and that they did make valuable improvements during their occupancy of the office. Every other material allegation of the bill is put in issue by the answers.

It is well settled that a verbal contract for the sale or leasing of land, if partly performed by the party seeking the remedy, may be specifically enforced by a court of equity, notwithstanding the statute of frauds. 3 Pom. Eq. Jur. section 1409.

The verbal contract relied on must be certain and definite in its terms. "The acts proved in part performance must refer to, result from, or be made in pursuance of the agreement proved. The agreement must have been so far executed that a refusal of full execution would operate a fraud upon the party, and place him in a situation which does not lie in compensation. Where these three things concur, a court of equity will decree specific execution. Where they do not, it will turn the party over to seek compensation in damages in a court of law." *Wright* v. *Pucket*, 22 Gratt. 374.

"According to well-settled principles, the contract sought to be specifically executed must be established by competent proofs, and be clear, definite, and unequivocal in all its terms. If the terms are uncertain, ambiguous, or not made out by satisfactory proofs, a specific performance will not (as, indeed, upon principle, it should not) be decreed. 2 Story, Eq. Jur. section 764. The reason is obvious enough; for a court of equity ought not to act upon conjectures, and one of the most important objects of the statute of frauds was to prevent the introduction of loose and indeterminate proofs of what ought to be established by solemn written contracts." *Pierce's Heirs* v. *Catron's Heirs*, 23 Gratt. 595.

It may be added that the conditions which are thus declared

to be essential to the specific execution of a verbal contract upon the ground of part performance should be established by clear and satisfactory proof.

When we come to consider the facts of this case, we find that the material allegations of the bill are denied in the answer and are not sustained by the proof. Upon two essential terms of the contract—the duration of the lease and the amount of rent reserved—the evidence is hopelessly conflicting and contradictory. It is impossible to say, in the language of *Pierce's Heirs* v. *Catron's Heirs, supra,* that "the contract sought to be specifically executed has been established by abundant proof, and is clear, definite, and unequivocal in all its terms."

To enter into a detailed discussion of the evidence, to point out the conflict among the witnesses and the discrepancies apparent in the written correspondence, which were the subject of criticism in argument, would be to prolong this opinion without subserving any useful purpose.

It would seem, however, that in no event should the contract in this case be specifically enforced, because the acts of part performance are not such as would amount to a fraud upon the plaintiff if specific enforcement were denied. Where a party has been induced by a verbal agreement to change his condition in life, to expend considerable sums of money, and to do acts whose value cannot be measured in money and compensated for in damages, equity should protect him by a specific execution of the contract; but as was well said in *Wright* v. *Pucket, supra,* there has been in this case no such part performance as cannot be compensated in damages; there was nothing in the situation of the appellant to prevent his recovering at law full indemnity and compensation for the alleged breach of the contract which he seeks specifically to execute. "The tendency of all the modern cases, both in England and in this country, is to prefer giving the party compensation in damages, instead of a specific performance. Wherever damages will answer the

purpose of indemnity, this alternative will be preferred, as it will equally satisfy justice, and will be coincident with the provisions and in support of the authority of the statute."

In the case before us, a real estate firm rents a single room as an office, and they make certain improvements, which, as between themselves, upon the dissolution of the firm, were ascertained to be worth a definite sum of money, which Henley undertook to pay the retiring partner. I am at a loss to see, if Warren could be compensated by Henley, why Henley could not have been compensated in damages by Silsby.

The decree appealed from dissolves the injunction awarded to the prosecution of the action of unlawful detainer, and undertakes to dismiss that action, and in this we think the decree is erroneous and should be corrected.

It would have been better practice if the plaintiff in the bill had been required to confess judgment in the action at law. In *Manufacturing Co.* v. *Henry's Admr.*, 25 Gratt. 575, it is said to be "a matter in the discretion of the chancellor, in granting the injunction, whether he will or will not require a confession of judgment in the action at law." In our judgment, the better rule is to require that a judgment be confessed before the injunction is granted, to be held, of course, under the control of the chancellor, and to be dealt with as he shall direct, so that, in the event that the injunction is dissolved and the bill dismissed upon the ground that the defense of the plaintiff to the action is legal and a court of equity has no jurisdiction, the judgment may be set aside and the case at law reinstated, to the end that he may not be denied an opportunity to be heard in the one or the other forum. But that was not done in this case. The judgment was not confessed, and the action still pends in a court of law. When the injunction is dissolved, the parties to that action are free to prosecute and to defend, and there is no power in a court of equity to dismiss it.

It is clear, however, that the appellees have substantially prevailed in this controversy. It has been established that appellant has no equitable defense to the demand made for the possession of the premises which he occupies. It would seem that he has no defense at law, for at law the contract under which he claims to have held the premises in question is void under the statute of frauds.

Upon the whole case, we are of opinion that the decree appealed from should, in so far as it undertakes to dismiss the action of unlawful detainer, be amended, and, as amended, that it be affirmed.

*Amended and Affirmed.*