PAGE et al. v. OLD DOMINION TRUST CO.

In re PIZZINI.

(Circuit Court of Appeals, Fourth Circuit. February 8, 1919.)

No. 1663.

BANKRUPTCY ⟨∞⟩188(3)—EQUITABLE LIEN.

> Where bankrupt, after recording a trust deed securing his notes, which latter he delivered to payee, retained the deed and executed other notes purporting to be those secured by it, upon which he borrowed money from a bank, not only was the lien of the first payee on the mortgaged property a prior one, but the bank acquired no equitable lien on the property superior to the claims of unsecured creditors as represented by bankrupt's trustee, especially since Code Va. 1904, § 2463, makes parol liens void as against creditors.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond, in bankruptcy; Edmund Waddill, Jr., Judge.

In the matter of William B. Pizzini, bankrupt; the Old Dominion Trust Company, trustee. L. R. Page and the Old Dominion Trust Company, trustees for C. D. Langhorne, appeal from an order denying them a lien. Affirmed.

Robert E. Scott, of Richmond, Va. (Page & Leary and Scott & Buchanan, all of Richmond, Va., on the brief), for appellants.

Norvel L. Henley, of Williamsburg, Va. (Brockenbrough Lamb, of Richmond, Va., and Henley, Hall, Hall & Peachy, of Williamsburg, Va., on the brief), for appellee.

Before PRITCHARD and WOODS, Circuit Judges, and CONNOR, District Judge.

WOODS, Circuit Judge. In this appeal is to be determined the proper application of the proceeds of the sale of a lot of land in the city of Richmond sold by order of the court in the administration of the estate of William B. Pizzini, bankrupt. The facts are not in dispute. On June 15, 1914, Pizzini conveyed the lot to H. K. Franklin, trustee, to secure seven notes, one for the principal sum of $15,000, payable three years after date, and six notes, for $450 each, for the semiannual interest, all payable to bearer at the National State & City Bank, Richmond, Va. On the notes was an indorsement to the effect that they were secured by the deed of trust. On July 1, 1914, William B. Pizzini, as payment of past indebtedness and for cash paid at the time, delivered the notes and the deed of trust to his uncle, Louis W. Pizzini. Louis W. Pizzini returned the deed of trust to William B. Pizzini, to be

by him delivered to the clerk of the chancery court for record. On July 3, 1914, William B. Pizzini gave to Louis W. Pizzini the clerk's certificate of record, but retained the deed of trust.

In January, 1915, William B. Pizzini applied to the Old Dominion Trust Company for a loan of from $12,500 to $15,000, to be secured by a first mortgage or trust deed on the same property. Upon examination of the title, the trust company found that it was incumbered only by the trust deed to Franklin. Falsely representing that the notes and trust deed securing them were held by his bank as security for a small loan, and pretending to wish to avoid the expense of new papers, Pizzini proposed to pay the small debt to the bank, give to the trust company his note for $12,500, and deposit as collateral the trust deed to Franklin, the notes it secured, and the policy of insurance on the property. Upon acceptance of this proposition, Pizzini gave to the trust company his note for $12,500, dated February 18, 1915, payable two years after date, and four notes representing the semiannual interest thereon. At the same time he turned over as collateral to the trust company the trust deed made to Franklin, and notes signed by himself exactly answering to the description of those secured by the trust deed, representing that they were the genuine notes. Upon this apparent security and no other the trust company lent $12,500 money of C. D. Langhorne, which it held in trust for investment.

After the adjudication in bankruptcy, it was discovered that Louis W. Pizzini held the genuine notes secured by the trust deed. At the sale made by order of the court, the property brought $24,700. In the contest over the proceeds it was at first contended by the Old Dominion Trust Company that it was entitled to be paid in preference to Louis W. Pizzini; but that issue was decided against the trust company, and there is now no dispute that Louis W. Pizzini is entitled to be first paid out of the proceeds. The present claim of the Old Dominion Trust Company is to the surplus proceeds of sale as against the trustee in bankruptcy, representing the unsecured creditors. The referee reported against the claim of the trust company, and this report was confirmed by the District Court.

The position taken by the appellant is that the transaction between Pizzini and the trust company shows an intention of Pizzini to give, and of the trust company to take, a lien on the lot to secure the loan of $12,500, and that the court should effectuate that intention by holding the transaction to be an equitable lien or mortgage entirely outside of and beyond the trust deed, superior to the claims of the trustee standing in the position of a judgment creditor. It is not pretended that there was any written agreement to give any lien to the trust company, except that which was represented by the deed of trust to Franklin, and therefore, if any lien was intended, it must have been a lien created by parol. It is impossible to support such a claim either on principle or authority.

Prior to the enactment of section 2463 of the Code of Virginia, a lien might be created by a parol agreement even as against subsequent judgment creditors without notice. Floyd v. Harding, 69 Va. (28 Grat.) 401. This anomalous condition of the law, by which a parol agreement

for a lien took precedence of subsequent judgment liens, while a written unrecorded mortgage did not, was remedied by that section of the Code which provides:

"Every contract, not in writing, made, in respect to real estate or goods and chattels, in consideration of marriage, or made for the conveyance or sale of real estate, or a term therein of more than five years, shall be void, both at law and in equity, as to purchasers for valuable consideration without notice and creditors." Norfolk & Portsmouth T. Co. v. White, 113 Va. 102, 73 S. E. 467, Ann. Cas. 1913E, 655.

Straley v. Esser, 117 Va. 135, 83 S. E. 1075, and Young v. Holland, 117 Va. 433, 84 S. E. 637, earnestly relied on by appellant, have no application. These cases only decide that the recording statutes and section 2463 do not protect judgment creditors against a resulting trust or an express trust created by a grantee at the time of the conveyance by his contract, expressed or implied, to the effect that he would hold the land for another who had paid the purchase money. There was no semblance of an agreement in this case that Pizzini would hold the lot in trust for the Trust Company. Nor does Charlottesville Hardware Co. v. Perkins, 118 Va. 34, 86 S. E. 869, affect the question, for it merely reaffirms the Virginia doctrine that the lien of a judgment attaches only to whatever interest the debtor has, and that where a conveyance and mortgage for the purchase money are interdependent parts of the same transaction the interest of the grantee vests subject to the mortgage, which, although unrecorded, cannot be displaced by judgments against the grantee.

But, laying aside section 2463, it is perfectly clear that there never was any intention by Pizzini to give, or by the trust company to take, a parol agreement for a lien as security. Nor was there any promise on the one side, or expectation on the other, that another mortgage or deed of trust should be executed, or that another lien should be given in any form; and this obviously distinguishes the case from Dulaney v. Willis, 95 Va. 608, 29 S. E. 324, 64 Am. St. Rep. 815. To warrant a court in holding that an equitable lien was created, "equity requires a clear mutual understanding and a positive assent on the part of each party. An offer must be accepted in the terms and form submitted, or there is no valid assent such as will create a contract which may be specifically enforced." Creecy v. Grief, 108 Va. 320, 61 S. E. 769, and Shield v. Adkins, 117 Va. 619, 85 S. E. 492. The transaction shows on its face that the sole intention of Pizzini, which he carried out, was to obtain the money of the trust company without any security, on the deception that he controlled and could confer upon the trust company the security of the trust deed executed to Franklin. That this was his intention, and that the trust company relied alone on the security of the trust deed already given to Franklin, is made the more evident by the fact that the original plan of executing another security was abandoned and reliance on the trust deed already executed substituted. The obtaining of money by Pizzini, by representing that he owned or controlled a certain piece of property, namely, the trust deed, was nothing more than the ordinary case of obtaining money under false pretenses.

The court is not asked to carry out the real agreement that the trust company should have the security of the trust deed executed to Franklin, for that is impossible. The position submitted is that the court has the power which equity requires it to exercise against lien creditors of creating another lien, not thought of by the parties, because that upon which the trust company relied turned out to belong to some one else. Judicial power does not extend to that point.

Equities against Pizzini to require him to make good his representation to the trust company that he was giving a good title to the Franklin trust deed cannot operate to estop the trustee in bankruptcy representing the interest of creditors for whose protection the recording acts, and section 2463 of Virginia Code were intended. Fairbanks Steam Shovel Co. v. Wills, 240 U. S. 642–648, 36 Sup. Ct. 466, 60 L. Ed. 841.

Affirmed.